**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Indianapolis Division**

| | |
|---|---|
| CAREY ALLEN, | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) **Case No.**   1:20-cv-248 |
| | ) |
| EQUIFAX INFORMATION SERVICES, LLC, | ) |
| TRANSUNION, LLC, | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) |
| and FORUM CREDIT UNION | ) |
| *Defendants*. | ) |

## COMPLAINT WITH JURY TRIAL DEMAND

Plaintiff, Carey Allen ("Allen"), by and through undersigned counsel, complains of

Defendants, Equifax Information Services, LLC ("Equifax"), TransUnion, LLC ("TransUnion"),

Experian Information Solutions, Inc. ("Experian"), and Forum Credit Union ("Forum") as

follows:

### Preliminary Statement

1.      This action is based on Defendants' inaccurate and misleading reporting,

failure to report certain tradelines or tradeline information as disputed, and failure to conduct

reasonable reinvestigations with respect to such information following receipt of a dispute from a

consumer.

2.      This action is being brought in part because Allen is desirous of obtaining credit at

rates reflective of his credit risk following the successful completion of a years-long Chapter 13

bankruptcy. These rates were not previously available to him and are material to his ability to

achieve long term financial success. At present, he is forced to pay increased rates due in part to the

allegations contained herein.

## Summary of Applicable Law

3.        Under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681 *et seq.*, consumer reporting agencies are charged with three primary duties: (1) the duty to follow reasonable procedures to assure maximum possible accuracy of information when preparing consumer reports, 15 U.S.C. § 1681e(b); (2) the duty to reasonably reinvestigate consumers' disputes of inaccurate information, and then appropriately correct or modify the disputed information, 15 U.S.C. § 1681i; and, (3) the duty to note a disputed item in the consumer's credit report, 15 U.S.C. § 1681c (f).

4.        A consumer reporting agency's duty to reasonably reinvestigate consumers' disputes of inaccurate or misleading information explicitly includes the duty to notify the providers of the disputed information. This is because the provider of the disputed information stands in a far better position to make a thorough investigation of the disputed information than the credit reporting agency.

5.        The FCRA also imposes duties on entities who provide credit information ("Furnishers") to credit reporting agencies. Specifically, the statute requires Furnishers to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b). In addition, if the investigation finds that the information is incomplete or inaccurate, the statue also requires Furnishers to "report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." *Id.*

6.      In determining whether a Furnisher violated § 1681s-2(b), courts first ask whether the Furnisher "conduct[ed] a reasonable investigation…[after it] receive[d] a notice of dispute from a CRA." *Gorman v. Wolpoff & Abramson, LLP*, 584 F. 3d 1147, 1157 (9th Cir. 2009).

7.      Generally, questions regarding the reasonableness of an investigation are best for a jury to determine. *See Meyer v. F.I.A. Card Serv., N.A.*, 780 F. Supp. 2d 879, 883 (D. Minn. 2011). That said, regardless of an investigation's reasonableness, a Furnisher may be entitled to summary judgment if the consumer fails "to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover." *Id.*

8.      The Seventh Circuit has held, "even if [credit] information is technically correct, it may nonetheless be inaccurate if, through omission, it "creates a materially misleading impression." *Johnson v. TransUnion, LLC*, 524 F. App'x 268, 370 (7th Cir. 2013) ("Johnson must prove that something in his credit report was inaccurate, or at least misleading, to show that the defendants' procedures were unreasonable"); *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013); *Gorman*, 584 F. 3d at 1157 (9th Cir. 2009); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012).

9.      Furnishers also have a freestanding duty under 15 U.S.C. § 1681s-2 (a) (3) to inform credit reporting agencies that credit information is disputed. As noted above, consumers may not enforce provisions of sub-section (a) directly. However, "the fact that a furnisher is affirmatively obligated to flag an account as disputed under § 1681s-2(a) does not undermine the conclusion that a *failure* to flag the account as disputed also constitutes a material inaccuracy under § 1681s-2(b)." *Seamans*, 744 F. 3d at 867.

10.     In turn, several circuits have built upon the materially misleading standard by holding that a Furnisher may "create a materially misleading impression" when, "having received notice of a consumer's potentially meritorious dispute, [the] furnisher subsequently fails to report that claim as in fact disputed." *Gorman*, 584 F.3d at 1162-64; *Saunders*, 526 F.3d at 149-50. This is because "fail[ing] to report a bona fide dispute" "could materially alter how the reported debt is understood."

## Jurisdiction and Venue

11.     Because this case arises under the FCRA, this Court has federal question jurisdiction pursuant to 28 U.S.C.A. § 1331.

12.     This Court has personal jurisdiction over the Defendants because they routinely conduct business in the State of Indiana, including the conduct complained of herein.

13.     Venue is proper in the Southern District of Indiana because a substantial part of the events or omissions giving rise to the claims herein occurred in this district as required by 28 U.S.C.A. § 1391.

## Parties

14.     Allen is a natural person who resides in Monrovia, Indiana.

15.     Allen is an individual and therefore a "consumer" as that term is defined by 15 U.S.C.A. § 1681a(c).

16.     Equifax, Experian and TransUnion regularly assemble and evaluate consumer credit information for the purpose of furnishing consumer reports to third parties, and use interstate commerce to prepare and furnish the reports, and accordingly, are each considered a "consumer reporting agency" as that term is defined by 15 U.S.C.A. § 1681a(f).

17.     Equifax, Experian, and TransUnion then sell this consumer credit information to readily paying subscribers including retailers, landlords, potential employers, and other interested parties.

18.     Forum regularly and in the ordinary course of business furnished information to one or more consumer reporting agencies about Allen's transactions and is therefore a "Furnisher" as that term is used in 15 U.S.C.A. § 1681s-2.

**Factual Allegations Regarding Allen' Bankruptcy Proceedings.**

19.     On or about August 4, 2014, Allen filed a Chapter 13 bankruptcy proceeding in the Southern District of Indiana, under Cause No. 14-07250-RLM-13.

20.     Forum was listed in Allen's Schedule D as having a secured claim in the amount of $31,952.00.

21.     A true and accurate copy of the aforementioned Schedule D is attached hereto as "Exhibit A."

22.     On September 5, 2014, Forum filed a Proof of Claim in the amount of $31,606.61

23.     Thereafter, Allen filed his Chapter 13 Plan in accordance with 11 U.S.C. §1322(b)(5), providing for the payment of all future Forum obligations directly to Forum outside of the Chapter 13 Plan.

24.     A true and accurate copy of the relevant portion of Allen's Chapter 13 Plan is attached hereto as Exhibit B.

25.     Allen met all requirements of his Chapter 13 bankruptcy and as a result, he received an Order of Discharge on May 1, 2019.

26.     Allen's obligation to Forum was not discharged.

27.     Allen continued to make, and Forum continued to service and accept, monthly payments pursuant to the terms of the loan until it was paid in full in July of 2019.

28.     Forum did not close its account with Allen.

**Factual Allegations Regarding The CDIA, Metro 2, And Credit Risk Scoring.**

29.     The reporting of consumer credit information, by credit reporting agencies ("CRAs") and data Furnishers, is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment.

30.     In 2012, the Federal Trade Commission conducted a study regarding consumer credit reporting errors and determined that anywhere from 10 to 21 percent of consumers have confirmed errors on their consumer reports. Consumers can help raise their credit score by having errors on their credit reports corrected, and consumers seeking to rebuild their credit would be well advised to obtain their credit reports and review them for accuracy.

31.     The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

32.     Because consumer credit reporting information has such far reaching implications for nearly all consumers, the CDIA works together with CRAs to develop, maintain, and enhance industry standard reporting formats and guidelines.

33.     The product of that cooperation is the Metro 2 reporting standards published by the CDIA to assist Furnishers with their compliance requirements under the FCRA. The Metro 2 standards are documented in the Credit Reporting Resource Guide ("CRRG"), an industry-standard publication produced and distributed by the CDIA.

34.     The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

35.     At all times relevant, the Defendants herein adopted, implemented, and sought to adhere to the Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

36.     At all times relevant, the CRAs named herein required all entities to whom it grants consumer information reporting rights and access, to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

**Factual Allegations Regarding e-Oscar and Notices of Consumer Disputes**

37.     The FCRA requires CRAs to implement an automated reinvestigation system through which Furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

38.     To comply with those requirements, TransUnion, Equifax, and Experian developed a browser based software system that allows them to electronically notify Furnishers quickly and easily about disputed credit reporting information, and for Furnishers to quickly and easily respond to such disputes following investigation. The system is commonly referred to as e-OSCAR and was designed to be Metro 2 compliant.

39.     The e-Oscar system primarily supports Automated Credit Dispute Verification

("ACDV") and Automated Universal Dataform ("AUD") processing but also various related data reporting processes.

40.    ACDVs are notifications initiated by a CRA, and transmitted to a Furnisher, in response to a consumer dispute, and are the primary method the CRAs use to fulfill their statutory obligation to notify Furnishers of disputed information by a consumer.

41.    If a Furnisher's investigation of a consumer's dispute determines the information in dispute is incomplete or inaccurate, the FCRA requires the Furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the Furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

42.    The e-Oscar system facilitates the Furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "carbon copy" of an ACDV response "to each CRA with whom the furnisher has a reporting relationship" in addition to the response sent to the initiating CRA.

### Factual Allegations Regarding the Fair Isaac Corporation

43.    One such entity that regularly reviews consumer reports, and uses the data contained therein is the Fair Isaac Corporation.

44.    The Fair Isaac Corporation uses the data in consumer reports to calculate a consumer's credit score (also known as credit risk scores).

45.    Credit score is a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default. Consumer Financial Protection Bureau, Supervision and Examination Manual, Version 2 (October 2012), p 53.

46.    The Fair Isaac Corporation credit risk scoring system ("FICO") is the leading credit

risk scoring system, and utilizes data reported by credit reporting agencies and Furnishers which are, ostensibly, in compliance with Metro 2 standards.

47. FICO scores are calculated from five main categories of credit data in a consumer's credit report. Those categories, and their weighted values, are as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and, mix of accounts/types of credit accounts for 10% of a consumer's FICO score.

48. The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's FICO score.

49. Inaccurate or incorrect credit reporting often results in a lower FICO score, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.

**Inaccurate and Materially Misleading Information Reported by Equifax**

50. Sometime in or around October of 2019, Allen obtained a copy of his consumer credit report as published by Equifax.

51. The report contained incomplete, misleading, and inaccurate information relative to his Forum tradeline, now being published and reported by Equifax. Specifically, the Equifax credit report reflected that the date of Allen's last payment to Forum towards his Forum obligation was in August of 2014, that the obligation was "Included in Wage Earner Plan," contained an additional comment stating "Bankruptcy Chapter 13", stated a "Date of First Delinquency" and a "Date of

Major Deficiency" both in August of 2014, and failed to include reference to the timely adequate payments he made directly to Forum until the loan was paid off in its entirety in July of 2019.

52.     Equifax's reporting was also inaccurate and misleading because the Forum tradeline is described as a negative or potentially negative account when it is neither.

53.     The reporting was also inaccurate and misleading because it does not comply with the CDIA's Metro 2 reporting standards, as discussed above.

54.     While not dispositive, Courts rely on such guidance to determine Furnisher liability. *See, e.g.*, *Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136 (S.D. Cal., Jan. 23, 2018).

55.     Further, failure to adhere to the Metro 2 format, or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n (a). *See Gillespie v. Equifax Info. Servs., LLC*, No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

56.     Therefore, within a letter dated November 10, 2019, Allen disputed the inaccurate and misleading information to Equifax and advised Equifax of the specific facts that rendered it so.

57.     A true and accurate copy of the dispute letter is attached hereto as "Exhibit C."

58.     Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Forum of Allen's dispute within five business days of receiving Allen's dispute, to forward all relevant information and any documents included with Allen's dispute, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Allen's consumer file.

59.     In response, within a document dated November 28, 2019, Equifax advised Allen that it had researched his dispute yet provided a copy of the disputed Forum tradeline that merely

reproduced the errors identified by Allen in his original dispute letter.

60.    A true and accurate copy of Equifax's reinvestigation report is attached hereto as "Exhibit D."

61.    Upon information and belief, Equifax timely notified Forum of Allen's dispute in accordance with 15 U.S.C.A. § 1681i.

62.    In the alternative, Equifax did not notify Forum of Allen's dispute and did not perform any reinvestigation into the dispute under either "standard" or "expedited" procedures as described by § 1681i(a)(8).

63.    Allen provided all necessary information with his dispute letter to Equifax, does have a current Equifax file, and has actively used credit in the past ten years.

64.    Equifax was required to communicate the specifics of Allen's dispute to Forum. Likewise, Forum had a duty to investigate the dispute and accurately report their findings to Equifax.

65.    Equifax had an affirmative duty to reasonably reinvestigate the dispute submitted by Allen and to accurately report the tradeline information notwithstanding the information it received from Forum.

66.    Allen's dispute was not frivolous or irrelevant.

67.    Equifax did not inform Allen that it had determined the dispute to be frivolous or irrelevant.

68.    Equifax did not identify any additional information required to investigate Allen's dispute.

**Inaccurate and/or Materially Misleading Information Reported by TransUnion**

69.     Also in or around October of 2019, Allen obtained a copy of his credit report as published by TransUnion.

70.     The report contained incomplete, misleading, and inaccurate information relative to his Forum tradeline, now being published and reported by TransUnion. Specifically, the TransUnion credit report reflected that Allen's obligation to Forum was "Closed" on July 12, 2019, contained a remark stating "Chapter 13 Bankruptcy" indicating that the account was included in bankruptcy, and failed to include reference to the timely adequate payments he made directly to Forum until the loan was paid off in its entirety in July of 2019.

71.     TransUnion's reporting was also inaccurate and misleading because the Forum tradeline is described as a negative or potentially negative account when it is neither.

72.     The reporting was also inaccurate and misleading because it does not comply with the CDIA's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

73.     While not dispositive, Courts rely on such guidance to determine Furnisher liability. *See Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136 (S.D. Cal. Jan. 23, 2018).

74.     Further, failure to adhere to the Metro 2 format, or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n (a). *See Gillespie v. Equifax Info. Servs., LLC*, No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

75.     Thus, within a letter dated November 10, 2019, Allen disputed the inaccurate and misleading information to TransUnion and advised TransUnion of the specific facts that rendered it so.

76.     A true and accurate copy of the dispute letter is attached hereto as "Exhibit E."

77.     Pursuant to 15 U.S.C. § 1681i, TransUnion had a duty to notify Forum of Allen's dispute within five business days, to forward all relevant information or documents included therewith for Forum to review, to conduct a reasonable reinvestigation of the dispute information, and to thereafter correct the tradeline.

78.     In response, within a document dated December 6, 2019, TransUnion advised Allen that it had researched his dispute and the current status was "verified as accurate." TransUnion provided a copy of the disputed tradelines that reproduced the errors identified by Allen in his original dispute letter.

79.     A true and accurate copy of the relevant portion of the TransUnion reinvestigation report is attached hereto as "Exhibit F."

80.     Upon information and belief, TransUnion timely notified Forum of Allen's dispute in accordance with 15 U.S.C.A. § 1681i.

81.     In the alternative, TransUnion did not notify Forum of Allen's dispute and did not perform any reinvestigation into the dispute under either "standard" or "expedited" procedures as described by § 1681i(a)(8).

82.     Allen's dispute was not frivolous or irrelevant.

83.     TransUnion did not inform Allen that it had determined the dispute to be frivolous or irrelevant.

84. TransUnion did not identify any additional information required to investigate Allen's dispute.

**Inaccurate and/or Materially Misleading Information Reported by Experian**

85. Also in or around October of 2015, Allen obtained a copy of his credit report as published by Experian.

86. That report contained inaccurate and misleading information relative to his obligation with Forum. Specifically, the Experian credit report reflected that Allen's Forum account was an account that "may be considered negative" and, within the Forum tradeline, indicated a status of "Discharged through Bankruptcy Chapter 13/Never Late."

87. The reporting above was inaccurate and misleading because Allen made timely and adequate payments on his obligation to Forum and it was not discharged via his Chapter 13 bankruptcy because it was paid outside of the Chapter 13 Plan directly to Forum.

88. The reporting was also inaccurate and misleading because the Experian report contained no indication of the timely and adequate payments that Allen made each month pursuant to his Forum obligation until he paid off the obligation in July of 2019.

89. Experian's reporting was also inaccurate and misleading because the Forum tradeline is described as a negative or potentially negative account when it is neither.

90. Alternatively, the report contained inaccurate and misleading information in that it reflects information not actually provided by Forum.

91. Experian's reporting was also inaccurate and misleading because it does not comply with the CDIA's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

92.     While not dispositive, Courts rely on such guidance to determine Furnisher liability. *See Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136 (S.D. Cal., Jan. 23, 2018).

93.     Further, failure to adhere to the Metro 2 format, or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). *See Gillespie v. Equifax Info. Servs., LLC*, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

94.     Thus, within a letter dated November 10, 2019, Allen disputed the inaccurate and misleading information to Experian and advised Experian of the specific facts that rendered it so.

95.     A true and accurate copy of the dispute letter is attached hereto as "Exhibit G."

96.     Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Forum of Allen's dispute within five business days, to forward all relevant information or documents included therewith for Forum to review, to conduct a reasonable reinvestigation of the dispute information, and to correct the tradeline.

97.     In response, within a document dated December 6, 2019, Experian advised Allen that it had researched his dispute and updated the tradeline.  However, Experian provided a copy of the disputed tradeline that merely reproduced some of the errors that Allen complained of—specifically, Experian only changed the status from "Discharged through Bankruptcy Chapter 13/Never Late" to "Discharged through Bankruptcy Chapter 13."

98.     A true and accurate copy of the relevant portion of the Experian reinvestigation report is attached hereto as "Exhibit H."

99. Upon information and belief, Experian timely notified Forum of Allen's dispute in accordance with 15 U.S.C.A. § 1681i.

100. In the alternative, Experian did not notify Forum of Allen's dispute and did not perform any reinvestigation into the dispute under either "standard" or "expedited" procedures as described by § 1681i(a)(8).

101. Allen's dispute was not frivolous or irrelevant.

102. Experian did not inform Allen that it had determined the dispute to be frivolous or irrelevant.

103. Experian did not identify any additional information required to investigate Allen's dispute.

**Equifax, TransUnion, and Experian's Willful Conduct in Detail.**

104. Under § 1681i, which mandates the procedures a CRA must follow in cases of disputed accuracy, there are only two scenarios under which a CRA may legally be allowed to refrain from notifying the Furnisher of disputed information of a consumer's dispute: (1) if a CRA determines that a consumer's dispute is frivolous or irrelevant; or (2) if the CRA resolves the dispute under an expedited dispute resolution process.

105. Neither scenario applies to the conduct of Equifax, TransUnion, or Experian as complained of herein.

106. Under § 1681i (a)(3), Equifax, TransUnion, or Experian may be relieved of their individual duties to notify the Furnisher of the disputed information of the consumer's dispute if they determine that a consumer's dispute is frivolous or irrelevant.

107. However, because § 1681i (a)(2) requires that a CRA notify a Furnisher of

disputed information within five days of receiving a consumer's dispute, the CRA must make the determination that the dispute is frivolous or irrelevant before the five days is up.

108.     In the event a CRA determines that a consumer's dispute is frivolous or irrelevant, § 1681i (a)(3) requires the CRA to notify the consumer of the CRA's determination. That notice must: (a) be given within five days of the CRA's determination; (b) be in writing, or by other means authorized by consumer; (c) state the reasons the CRA determined the dispute was frivolous or irrelevant; and (d) identify any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

109.     Equifax, TransUnion, and Experian did not inform Allen that they had determined his dispute was frivolous or irrelevant, as required by § 1681i (a)(3)(B) if a dispute is determined to be frivolous or irrelevant.

110.     If Equifax, TransUnion, and Experian had conducted a reasonable reinvestigation and notified Forum of Allen's disputes, the tradeline would be reporting accurately and differently than it is now.

111.     Equifax, TransUnion, and Experian had the ability to easily conduct a reasonable reinvestigation of Allen's dispute.

112.     Despite the foregoing, Equifax, TransUnion, and Experian made the intentional choice to not conduct a reasonable reinvestigation of Allen's disputes, in reckless disregard of their duties under the FCRA.

113.     Accordingly, Equifax, TransUnion, and Experian's conduct was willful.

**Inaccurate and Misleading Information as it Pertains to Forum**

114. Forum breached its duties as described above and below.

115. By inaccurately reporting debt information after receiving notice of its errors as detailed above, Forum failed to take appropriate measures as set forth in 15 U.S.C.A. § 1681s-(2)(b)(1)(D) and 1681s-(2)(b)(1)(E). This includes but is not limited to the failure to conduct a reasonable investigation and the failure to mark the account as disputed by the consumer.

116. Forum has either failed to conduct an investigation at all or has failed to consider and evaluate the Plaintiff's specific dispute, along with all other facts and materials provided to it or readily available, as provided by Equifax, TransUnion, or Experian.

117. As a result of Forum's willful actions and omissions, Allen is eligible for actual damages, statutory damages, punitive damages and reasonable attorney's fees.

**Injury to Allen As A Result of the Acts and Omissions Herein**

118. The Defendants' acts and omissions have injured Allen in several ways including but not limited to the diminishment of his FICO and other credit scoring models.

119. Allen has also experienced aggravation, frustration, and stress due to the Defendants' failure to correct the errors identified herein.

120. The Defendants impermissibly reported inaccurate information, and omitted other positive information, relative to Allen's Forum obligation without conducting a reasonable reinvestigation of the disputed information, without notifying Allen, and without just cause.

121.     This conduct has negatively affected and diminished Allen's FICO and other credit scoring model scores by excluding positive payment history, length of credit history, and credit mix information that would, but for the items raised herein, be used to calculate his credit score.

122.     Courts have regularly held that allegations of lower credit scores and a material risk of harm, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiff alleged that they "have suffered damage to their credit and been forced to pay First Merchants greater payments and a higher interest rate."); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing.") *Binns v. Ocwen Loan Servicing, LLC*, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to Plaintiff's credit scores and reputations were considered intangible harms").

123.     Allen wants to improve his FICO and other credit risk modeling scores so to obtain financing at rates reflective of his credit risk

124.     As such, Allen took specific actions to address inaccuracies and misleading information in his credit reports.

125.     If the Defendants had conducted a reasonable investigation of Allen's dispute, the Forum tradeline would be reporting Allen's timely and adequate payments and would be reporting the account as paid off in full as agreed.

126. If the Forum tradeline were reporting accurately, Allen's FICO and other credit scoring model scores would be improved.

127. If Allen's FICO and other credit model scores were improved to where they should be, he could obtain additional credit opportunities or credit opportunities at more favorable rates, and enjoy the cost savings inherent thereto.

## **TRIAL BY JURY**

128. Allen is entitled to and hereby requests a trial by jury.

## **CAUSES OF ACTION**
## **COUNTS I & II: VIOLATION OF THE FCRA (EQUIFAX)**
[15 U.S.C.A. § 1681e (b) and 1681i]

129. Allen incorporates by reference all preceding paragraphs as though fully stated herein.

130. Equifax negligently, or in the alternative willfully, violated 15 U.S.C.A. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Allen's consumer reports.

131. Equifax also negligently and willfully violated 15 U.S.C.A. § 1681i in multiple ways including but not limited to failing to conduct a reasonable reinvestigation of Allen's disputes and failing to appropriately modify inaccurate information in Allen's file. *See Zahran v. Bank of Am.*, 2015 WL 4397779 (N.D. Ill. July 17, 2015)

132. As a result of Equifax's violation of 15 U.S.C.A. § 1681e (b) and 15 U.S.C.A. §1681i, Allen has suffered actual damage including but not limited to emotional distress, the unjust suppression of his FICO credit score, the resulting payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, an informational injury, certain out of pocket

expenses, and a material risk of future financial harm if the information is not corrected. Therefore, Allen is entitled to recover actual damages pursuant to 15 U.S.C.A. § 1681n and 1681o and statutory damages pursuant to 15 U.S.C.A. § 1681n.

133. Equifax's acts and omissions are the direct and proximate cause of Allen's actual damage.

134. Allen is entitled to recover costs and attorney's fees from Equifax pursuant to 15 U.S.C.A. § 1681n and 1681o.

## COUNTS III & IV: VIOLATIONS OF THE FCRA (TRANSUNION)
[15 U.S.C.A. § 1681e (b) and 1681i]

135. Allen incorporates by reference all preceding paragraphs as though fully stated herein.

136. TransUnion willfully, or in the alternative, negligently violated 15 U.S.C.A. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Allen's consumer reports.

137. TransUnion also willfully, and/or with malice, or in the alternative, negligently violated 15 U.S.C.A. § 1681i in multiple ways including without limitation by failing to conduct a reasonable reinvestigation of Allen's disputes and by failing to appropriately modify inaccurate information in Allen's file. *See Zahran v. Bank of Am.*, 2015 WL 4397779 (N.D. Ill. July 17, 2015)

138. As a result of TransUnion's violation of 15 U.S.C.A. § 1681e (b) and 15 U.S.C.A. §1681i, the continued presence of the inaccurate and/or materially misleading information on Allen's credit report has caused him actual damage including but not limited to emotional distress, the unjust suppression of his FICO credit score, the payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, an informational injury, certain out of pocket

expenses, and a material risk of future financial harm if the information is not corrected. Therefore, Allen is entitled to recover actual damages pursuant to 15 U.S.C.A. § 1681n and 1681o and statutory damages pursuant to 15 U.S.C.A. § 1681n.

139.    TransUnion's acts and omissions are the direct and proximate cause of Allen's actual damage.

140.    Allen is entitled to recover costs and attorney's fees from TransUnion pursuant to 15 U.S.C.A. § 1681n and 1681o.

## COUNTS V & VI: VIOLATION OF THE FCRA (EXPERIAN)
[15 U.S.C.A. § 1681e (b) and 1681i (West)]

141.    Allen incorporates by reference all preceding paragraphs as though fully stated herein.

142.    Experian negligently, or in the alternative willfully, violated 15 U.S.C.A. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Allen's consumer reports.

143.    Experian also negligently and willfully violated 15 U.S.C.A. § 1681i in multiple ways including but not limited to failing to conduct a reasonable reinvestigation of Allen's disputes and failing to appropriately modify inaccurate information in Allen's file. *See Zahran v. Bank of Am.*, 2015 WL 4397779 (N.D. Ill. July 17, 2015)

144.    As a result of Experian's violation of 15 U.S.C.A. § 1681e (b) and 15 U.S.C.A. §1681i,  Allen has suffered actual damage including but not limited to emotional distress, the unjust suppression of his FICO credit score, the resulting payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, an informational injury, certain out of pocket expenses, and a material risk of future financial harm if the information is not corrected. Therefore,

Allen is entitled to recover actual damages pursuant to 15 U.S.C.A. § 1681n and 1681o and statutory damages pursuant to 15 U.S.C.A. § 1681n.

145. Experian's acts and omissions are the direct and proximate cause of Allen's actual damage.

146. Allen is entitled to recover costs and attorney's fees from Experian pursuant to 15 U.S.C.A. § 1681n and 1681o.

### COUNT VII: VIOLATIONS OF THE FCRA (FORUM)
[15 U.S.C.A. § 1681s-2(b)]

147. Allen incorporates by reference all preceding paragraphs as though fully stated herein.

148. Forum willfully and/or negligently violated 15 U.S.C.A. § 1681s-2(b) by its failure to conduct reasonable investigations upon receiving notice of Allen's disputes from one or more consumer reporting agencies, and/or by failing to review all relevant information provided by the consumer reporting agencies, and/or by failing to appropriately report the results of its investigations, and/or by failing to appropriately modify, delete, and/or block the inaccurate information.

149. As a result of Forum's violations of 15 U.S.C.A. § 1681s-2(b), Allen has suffered actual damages including but not limited to emotional distress (including aggravation, anxiety, and loss of rest), the unjust suppression of his FICO credit score, payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, informational injury, and a material risk of future financial harm.

**WHEREFORE**, Allen respectfully requests the following relief:

a. Actual damages;

b.  Statutory damages;

c.  Punitive damages pursuant to 15 U.S.C.A. § 1681n;

d.  Reasonable attorney's fees and costs pursuant to 15 U.S.C.A. § 1681n and/or 1681o;

e.  That an Order be issued for the Defendants to modify the inaccurate and misleading information being reported; and

f.  Such other and further relief deemed just and proper.

Respectfully submitted,

*/s/ Frank D. Otte*
Frank D. Otte, No. 19859-49
**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
Fax: (317) 687-2344
fotte@clarkquinnlaw.com
***Counsel for the Plaintiff***